# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LORI K. AUSTIN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 3:10-cv-00084 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Brown |
| THE BETTER BUSINESS BUREAU OF ) | |
| MIDDLE TENNESSEE, INC., ) | |
| ) | |
| *Defendant*. ) | |

## ORDER

Pending before the Court is Defendant The Better Business Bureau of Middle Tennessee, Inc.'s ("Defendant" or "the Bureau") Motion to Dismiss (Doc. No. 18) and Memorandum in Support (Doc. No. 19). Plaintiff Lori K. Austin ("Plaintiff" or "Austin") filed a Response to Defendant's Motion to Dismiss (Doc. No. 23) ("Plaintiff's Response"). Defendant then filed a Motion for Leave to File Reply Memorandum (Doc. No. 24), which the Court now **GRANTS**, and Proposed Reply Brief (Doc. No. 24-1).

For the reasons stated below, the Motion to Dismiss is hereby **DENIED**.

**I.  BACKGROUND**

   *A.  Factual Background[1]*

Plaintiff, a citizen and resident of Clarksville, Tennessee, is a former branch manager at the Clarksville facility of the Bureau, which is a domestic corporation incorporated in Tennessee. She began working for the Bureau in January of 2005, and at the time she was interviewed for the position, she revealed that she suffered from fibromyalgia and lupus. Her conditions

---

[1] All facts are drawn from Plaintiff's Amended Complaint (Doc. No. 14) unless otherwise noted.

1

substantially limited her major life functions, namely, walking and working. Plaintiff alleges that she was qualified for the job, and, indeed, she was hired and served as branch manager for nearly four years.

Austin became ill in September of 2008 due to an exacerbation of her fibromyalgia, which resulted in limb pain, limb spasms and jerking, leg weakness, and fatigue. These symptoms required her to be confined to a wheelchair for two months. She provided Defendant with statements from her physicians indicating that she needed time off until December 19, 2008 and, later, that she would in fact need to be absent until December 28, 2008.

Austin did not return to work on December 28 because her employment was terminated ten days prior, on December 18. She alleges that she did regain her mobility after the 28th, and that she was able to return to the job duties she had long performed.

Plaintiff brings this suit alleging that her discharge was unlawful on the basis that she is a disabled individual pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, which prohibits discrimination against qualified individuals with disabilities. She also alleges that she is entitled to relief under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101, *et seq.*, and the Tennessee Disability Act (TDA), Tenn. Code Ann. § 8-50-103, *et seq.*[2]

   *B. Procedural Background*

Plaintiff filed a complaint of discrimination on the basis of her physical disability with the Equal Employment Opportunity Commission ("EEOC") and the Tennessee Human Rights Commission on March 16, 2009. (Doc. No. 14 at 2.) She received a Notice of Right to Sue on

---

[2] As Defendant has pointed out, while Plaintiff makes reference to both the THRA and TDA, they are not separate causes of action—the TDA incorporates by reference the procedural rights available under the THRA. *See* Tenn. Code Ann. § 8-50-103(c).

2

November 5, 2009, and then filed this action within 90 days, on January 28, 2010 (Doc. No. 1). (Doc. No. 14 at 2.) She subsequently filed an Amended Complaint on March 29, 2010. (Doc. No. 14.) Defendant submitted its Motion on April 1, 2010 (Doc. No. 18), along with a Memorandum in Support (Doc. No. 19). After being granted an extension of time within which to file a response (Doc. No. 21), Plaintiff filed a Response on April 21, 2010 (Doc. No. 23). On April 26, 2010, Defendant filed a Motion for Leave to File a Reply (Doc. No. 24) with an attached Reply Brief (Doc. No. 24-1).

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Most recently, the Supreme Court clarified the standard in *Ashcroft v. Iqbal*, stating "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. 1937, 1949 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 546). The moving party has the burden of proving that Plaintiff has not stated a claim. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008).

When ruling on a defendant's motion to dismiss, the Court "[c]onstrue[s] the complaint liberally in the Plaintiffs' favor and accept[s] as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). The Court

must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556 (quoting *Schuer v. Rhodes*, 534 U.S. 232, 236 (1974)).

### III. ANALYSIS

"To recover on a claim of discrimination under the [ADA], a plaintiff must show that: 1) [s]he is an individual with a disability; 2) [s]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) [s]he was discharged solely by reason of [her] handicap." *Macy v. Hopkins Cnty. Bd. of Educ.*, 484 F.3d 357, 363 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). A claim under the TDA contains essentially the same elements, and Tennessee courts look to the federal law for guidance in enforcing the state's anti-discrimination laws.³ *See Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W. 3d 698, 705 (Tenn. 2000); *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 853 (Tenn. Ct. App. 2009). The basis for Defendant's Motion is that "the Amended Complaint fails to plead the second of these three elements." (Doc. No. 19 at 3.) The adequacy of the pleadings as to the first and third prongs of this analysis is not contested.

Defendant argues that while a leave of absence may constitute a reasonable accommodation in some circumstances, per the ADA's implementing regulations (29 C.F.R. app. § 1630.2(o)), Austin's lengthy absence made her unqualified to perform her role as a branch manager. (Doc. No. 19 at 3-4.) A manager, according to Defendant, is one who is in charge,

---

³ Defendant urges the Court that the ADA and TDA claims contain "substantially the same" elements and, thus, that they should be analyzed together. It should be noted that Defendant does not raise any state-law bases for dismissal, and instead only asks the Court to review and dismiss the Complaint in its entirety based on federal court interpretations of the ADA. Alternatively, Defendant asks that the Court dismiss Plaintiff's ADA claim and decline to exercise supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3). (Doc. No. 19 at 8.)

administers, directs, and supervises (among other things), and "these terms connote an active, consistent engagement with and participation in the affairs of whatever is being managed." *Id.* at 5. Defendant asserts that an absence of "weeks on end" would prevent a manager from "reasonably administering or supervising a branch office," and that a manager cannot "be replaced with other employees or a temporary hire": "'Temp agencies' hire out the manager's secretary, not the manager herself." *Id.* Defendant then argues that out-of-circuit precedent must be applied because its counsel "has not found a reported federal appellate case suggesting that an absence of this duration is even potentially reasonable for a management employee." (Doc. No. 19 at 5.) Instead, Defendant highlights that the Fourth Circuit has found that a business college instructor's repeated leaves of absence rendered her unqualified for her position, that the Eighth Circuit has found that a shoe store manager was not qualified for his position due to her repeated leaves of absence, and that the Seventh Circuit found potentially reasonable a two-to-four week absence of a corporate vice president of finance. *Id.* at 6 (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213-14 (4th Cir. 1994); *Moore v. Payless Shoe Source, Inc.* 187 F.3d 845, 848 (8th Cir. 1999); *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998)).

Plaintiff, on the other hand, cites a Sixth Circuit opinion, *Cleveland v. Federal Express Corp.*, for the proposition that there is no "bright-line rule defining a maximum duration of leave that can constitute a reasonable accommodation." (Doc. No. 23 at 3 (quoting 83 F. App'x 74, 78 (6th Cir. 2003)).) In *Cleveland*, the Sixth Circuit reversed a grant of a defendant's motion for summary judgment in part because it was possible that the plaintiff, a customer service representative, could carry her burden of showing that the six-month leave she requested was a reasonable accommodation, rendering her qualified to perform her job. *Cleveland*, 83 F. App'x at 79. *Cleveland* drew on an earlier Sixth Circuit case, in which the Circuit Court was convinced

5

by another court's statement of uncertainty that "there should be a *per se* rule that unpaid leave of indefinite duration (or a very lengthy period, such as one year) could never constitute a 'reasonable accommodation' under the ADA." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) (quoting *Norris v. Allied-Sysco Food Svcs., Inc.*, 948 F. Supp. 1418, 1439 (N.D. Cal. 1996)). The Court of Appeals went on to "conclude that no presumption should exist that uninterrupted attendance is an essential job requirement, and find that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs*, 155 F.3d at 783. Ultimately, the court found that summary judgment should have been denied to the defendant because the plaintiff's request for extended medical leave (the first she had required from any employment in eight years) could have been a reasonable accommodation, such that she would be qualified for her job. *Id.*

Although *Cleveland* was not recommended for publication, *Cehrs* was, and the Sixth Circuit itself followed *Cleveland* earlier this year, explaining that "this court has specifically noted that, under the ADA, an employer might be required to provide an extended leave period as part of a reasonable accommodation." *Price v. Bd. of Trs. of the Ind. Laborer's Pension Fund*, Nos. 09-3897/09-420409-4204, 2011 U.S. App. LEXIS 591, at *13 (6th Cir. Jan. 12, 2011). This recent citation to *Cleveland*, albeit in a different context, would suggest that the refusal in the *Cleveland* opinion to find a bright-line rule for the duration of a leave that can constitute a reasonable accommodation continues to be the rule within this circuit. Further, although Defendant suggests that *Cehrs* is distinguishable from the instant case because the employee involved was a non-manager (and presumably would distinguish *Cleveland* on the same basis) both cases assert a very broad proposition regarding the potential reasonableness of even lengthy medical leave as a reasonable accommodation. This Court has not been made

6

aware of any Sixth Circuit rule or case distinguishing wholesale between managerial and non-managerial employees that would preclude Plaintiff from relief based on the facts alleged in her Complaint.

Because there appears to be applicable Sixth Circuit precedent on the issue of whether a lengthy leave of absence may be a reasonable accommodation for a managerial employee, there is no need to adopt conflicting precedents from other circuits. The Sixth Circuit has left open the possibility that a lengthy leave—even one longer than that implicated in this case—might be a reasonable accommodation, and has explicitly declined to adopt a bright-line rule on this point.

Plaintiff appears to have been otherwise qualified for her job, in that she worked at the Bureau for over three years prior to the medical leave in question and Defendant has not brought to the Court's attention any problems with Plaintiff's performance in that time. Defendant's argument that, as a manager, Plaintiff could not perform the essential functions of her job if given an accommodation of sixteen weeks leave is undermined by the fact that Defendant did not seek to terminate Plaintiff until she had, by Defendant's count, already taken 108 days of leave, and sought to take only nine more. Although the Bureau now asserts that Plaintiff was not qualified to perform her job duties from September 2008 to December 28, 2008 (Doc. No. 19 at 2), termination did not occur until Plaintiff asked for a relatively short extension of the leave she had already been granted. These facts suggest that even Defendant may have considered Plaintiff qualified to continue on with her job after missing 108 days of work, until she requested the nine-day extension of leave. To the Court, this diminishes the strength of the argument that a managerial employee simply does not qualify for a lengthy period of leave as a reasonable accommodation. There is no reason to believe that, as a matter of law, a period of leave extending to December 28, 2008 could not be a reasonable accommodation.

As such, the Court finds that Plaintiff has pled facts that would plausibly establish that she is qualified, with a reasonable accommodation, to perform the essential functions of her position, and thus to recover on her claims (as there has been no contestation of the sufficiency of the pleadings as to the first and third prongs of the analysis described above). Dismissal of Plaintiff's case at this juncture is therefore inappropriate.

**IV.   CONCLUSION**

For the reasons stated above, Court hereby **DENIES** Defendant's Motion to Dismiss.

It is so ORDERED.

Entered this the ___18th_____ day of March, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT